UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER M. LYN,

*Plaintiff*,

v.

MOUNT SAINT MARY COLLEGE, *et al.*,

*Defendants*.

No. 25-CV-5165 (KMK)

OPINION & ORDER

Appearances:

Carlo A.C. De Oliveira, Esq.
Cooper Erving & Savage LLP
Albany, NY
*Counsel for Plaintiff*

Steven L. Banks, Esq.
Cassidy E. Allison, Esq.
Thomas, Drohan, Waxman & Petigrow LLP
Hopewell Junction, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Christopher Lyn ("Plaintiff"), the former head coach of the women's soccer team at Mount St. Mary College (the "College"), brings this Action against the College and Robert Gervasi ("Gervasi"), Shane Bell ("Bell"), Elaine O'Grady ("O'Grady"), Michael Lowell ("Lowell"), and Samantha Howe ("Howe")[1] (the "individual Defendants" and, including the College, "Defendants"), alleging Defendants violated state and federal employment discrimination laws by assigning him additional responsibilities and ultimately terminating him

[1] Howe is also referred to in Defendants' briefing as "Siegeltuch." (*See* Defs.' Mem. in Supp. re: Mot. to Dismiss 1 ("Defs.' Mem.") (Dkt. No. 39).)

after he complained about racially discriminatory language used by students on his team and the College's responses to them. Before the Court is Defendants' Motion to Dismiss the Amended Complaint (the "Motion"). For the following reasons, the Court grants the Motion as to the retaliation claims, and denies it in part as to the hostile work environment and discrimination claims involving certain conduct and certain defendants.

## I. Background

### A. Factual Background

The following facts are drawn from the Amended Complaint and are assumed true for the purpose of resolving the instant Motion. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).

Plaintiff was hired in 2016 as Head Coach of the women's soccer team at the College. (Am. Compl. ("AC") ¶ 13 (Dkt. No. 31).) Throughout his time as Head Coach, the team was successful, and Plaintiff had no record of formal or informal professional discipline until the end of his tenure. (AC ¶¶ 100–103.) In February 2023, three members of the team reported to Plaintiff that two of their teammates, A.D. and C.B., "were making racially discriminatory remarks in their dormitory and against [Plaintiff] personally," including the use of certain racial slurs and racist comments about Plaintiff. (*Id.* ¶¶ 28–29.) Plaintiff instructed the students to formally report the incidents, which they did, and Plaintiff emailed certain administrators at the college with his own concerns about their comments and to request a meeting, which took place shortly after. (*Id.* ¶¶ 30–31, 33.) The College placed A.D. and C.B. under investigation and suspended them until the investigation was complete. (*Id.* ¶ 32.) The investigation found that A.D. and C.B. had, in fact, made the remarks, and that they had violated the College's and the College's Athletic Department's codes of conduct in doing so. (*Id.* ¶ 35.) The College's Office

of Residential Life accordingly placed A.D. and C.B. on probation until the end of 2023 but did not decide whether they could remain on the team. (*Id.* ¶ 37.) The College's Athletic Director, Drew Brown ("Brown"), asked Plaintiff if A.D. and C.B. could return to the team following a two-game suspension. (*Id.* ¶ 38.) Plaintiff, feeling Brown's proposal was insufficient, instead recommended removing those students from the team entirely. (*Id.* ¶¶ 40–41.) Brown "sought input from players" on the team "as to what penalty A.D. and C.B. should receive" (something the College had not previously done before imposing discipline), and after the team also recommended their removal, the College removed them from the team. (*Id.* ¶¶ 43–46.)

Plaintiff alleges that sometime after the decision to remove A.D. and C.B. from the team, the College began increasing his workload. First, Brown appointed Plaintiff as "Community Service Coordinator for Athletics," which required Plaintiff to run a ten-week academic support program in the fall and spring semesters, attend various meetings and activities, and report to the College on community service activities and opportunities for the College's teams. (*Id.* ¶ 50.) Some of these "responsibilities were previously shared by all head coaches, who would report their own team's community service activities." (*Id.*) Plaintiff "complained about the assignment of additional duties" to two College administrators, Sharnie Canary and Gregoire Fluet, but "the additional responsibilities"—which Plaintiff carried out "very satisfactor[il]y"—"remained in place." (*Id.* ¶ 51.) Second, Plaintiff was assigned a role on the College's Diversity, Equity, and Inclusion ("DEI") Committee, which required him to attend meetings, report certain information to the Athletic Director, and "create DEI opportunities for the Athletic Department." (*Id.* ¶ 52.) Plaintiff "fulfilled these new responsibilities competently," which "prompted Defendants to burden him with another job duty: . . . ordering and changing printer ink and paper for his office building," which "no other Coach" had been required to do. (*Id.* ¶ 54.)

Nevertheless, "[i]n spite of his additional job responsibilities," Plaintiff led the team to "another successful season" in the 2023–24 year. (*Id.* ¶ 63.)

Shane Bell ("Bell") replaced Brown as the College's Athletic Director in January 2024. (*Id.* ¶ 59.) Bell told Plaintiff that Bell was aware of the College's investigation of A.D. and C.B.'s statements. (*Id.* ¶ 61.) Later, Bell met Plaintiff in June 2024 "to discuss [Bell's] concerns . . . related to recruiting charges and compensation spent by [Plaintiff's] Assistant Coach, Liz Cusato [("Cusato")]," who had worked as Plaintiff's assistant coach since July 2018. (*Id.* ¶¶ 65–66.) Bell admonished Plaintiff that Cusato's recruiting spend was more than Bell thought appropriate in light of the Athletic Department's budget, and that her compensation in the previous season was above a target Bell had set for the coming season. (*Id.* ¶ 73.) Plaintiff alleges these concerns were unfounded: the women's soccer team had not previously had budgetary problems because its "fundraising account provided supplemental funds to offset additional expenditures," and Plaintiff had not previously "been informed, nor were concerns ever raised about" Cusato's compensation or recruiting spend. (*Id.* ¶¶ 74–75.) Bell also wrote to Plaintiff in August 2024 concerning a student on the team who was on academic probation, suggesting the student request to change her academic standing and recommending "that 'all lean into helping'" the student. (*Id.* ¶¶ 80–81.) Bell asked other administrators to clarify the College's academic probation policies for student athletes, and Plaintiff forwarded the guidance to that student. (*Id.* ¶¶ 82–85.)

On September 30, 2024, Bell and the College's Director of Human Resources, Philip Brigante ("Brigante"), called Plaintiff in for a meeting where they told him he would be fired if he did not resign. (*Id.* ¶ 86.) Bell offered four reasons for Plaintiff's termination: (1) player attrition, with the team losing 17 players during Plaintiff's tenure; (2) that Plaintiff was often not

in his office; (3) that Plaintiff mismanaged funds with regard to Cusato's compensation and recruiting expenditures; and (4) that Plaintiff did not adequately support team members academically. (*Id.* ¶ 87.) Each reason, Plaintiff alleges, was "demonstrably false and pretextual." (*Id.* ¶ 88; *see also id.* ¶ 91 (explaining that player attrition was "unrelated to [Plaintiff's] performance"); *id.* ¶¶ 93–95 (explaining that Plaintiff's absences from his office were almost all related to his new responsibilities); *id.* ¶¶ 97–98 (explaining that Plaintiff "agreed to comply" with Bell's fiscal requirements as soon as Plaintiff learned of them and that no recruiting money had been spent by the point in the season that he was terminated); *id.* ¶ 99 (explaining that students on Plaintiff's team had the highest median GPA of all the College's teams).) Plaintiff also claims that the College offered additional reasons for his termination after the meeting, all of which, Plaintiff alleges, were also "demonstrably false." (*Id.* ¶¶ 89–90.)

B. Procedural Background

Plaintiff initiated this Action on June 20, 2025. (*See* Compl. (Dkt. No. 1).) In response to Defendants' pre-motion letter indicating Defendants would move to dismiss the Complaint, (*see* Letter from Steven L. Banks to Court (Aug. 19, 2025) (Dkt. No. 27)), Plaintiff agreed to file an Amended Complaint, (*see* Letter from Carlo A.C. de Oliveira to Court (Aug. 26, 2025) (Dkt. No. 28)), and did so on September 23, 2025, (*see* Am. Compl.). Defendants moved to dismiss the Amended Complaint on December 5, 2025. (*See* Mot. to Dismiss (the "Motion") (Dkt. No. 37); Defs.' Mem. in Supp. re: Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 39).) Plaintiff opposed the Motion on January 8, 2026. (*See* Pl.'s Mem. in Opp'n re: Mot. to Dismiss ("Pl.'s Mem.") (Dkt. No. 40).) Defendants replied on January 22, 2026. (*See* Reply Mem. in Supp. re: Mot. to Dismiss ("Reply") (Dkt. No. 41).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [the] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8

marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (noting that a district court should consider only the complaint, documents appended to the complaint or incorporated by reference, and matters of which judicial notice can be taken in ascertaining facts for a motion to dismiss).

## B. Analysis

### 1. Title VII, § 1981, and NYSHRL Discrimination Claims

Plaintiff asserts discrimination claims under 42 U.S.C. § 1981 and the NYSHRL against all Defendants, (*see* AC ¶¶ 107–19, 138–52), and under Title VII against only the College, (*see id.* ¶¶ 127–37). "[T]he same elements constitute a claim for employment discrimination under Section 1981 as under Title VII," *Kauffman v. Maxim Healthcare Servs., Inc.*, 509 F. Supp. 2d 210, 220 n.14 (E.D.N.Y. 2007); *see also Gomez v. City of New York*, No. 12-CV-6409, 2014 WL 4058700, at *3 (S.D.N.Y. Aug. 14, 2024) ("The substantive elements of a [S]ection 1981

employment discrimination claim are the same as those of a Title VII discrimination claim."), and under the NYSHRL, *see Morren v. New York Univ.*, No. 20-CV-10802, 2022 WL 1666918, at *14 n.38 (S.D.N.Y. Apr. 29, 2022) ("Employment discrimination claims under Section 1981 and the NYSHRL are analyzed under the same framework as Title VII."). That requires a plaintiff to plausibly allege that "(1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *see also Phillips v. United Food & Comm. Workers Union Loc. 2013*, No. 23-CV-8283, 2025 WL 2659087, at *8 (S.D.N.Y. Sept. 17, 2025) (same). Under the NYSHRL as amended, however, a plaintiff need not allege an adverse employment action for the third element of a prima facie case—he need only allege he was "treated . . . less well, at least in part for a discriminatory reason." *Everett v. New York City Dep't of Educ.*, No. 21-CV-7043, 2023 WL 5629295, at *11 (S.D.N.Y. Aug. 31, 2023) (quotation marks and citation omitted).

Here, Defendants do not contest whether Plaintiff belonged to a protected class or whether he was qualified as the team's head coach; they only contend that some of the changes in his employment were not adverse employment actions under Title VII and § 1981, and that neither those changes nor Plaintiff's ultimate termination occurred under circumstances giving rise to an inference of discriminatory intent. (*See* Defs.' Mem. 7–11, 18–20.)

First, the Court concludes Plaintiff has plausibly alleged he was subjected to an adverse employment action. To allege an adverse employment action, a plaintiff "does not have to show . . . that the harm incurred was 'significant[,]' [o]r serious, or substantial, or any similar adjective." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024); *see also Back v. Hapoalim*,

No. 24-1064, 2024 WL 4746263, at *2 (2d Cir. Nov. 12, 2024) (summary order) (describing *Muldrow* as overruling Second Circuit precedent that required a plaintiff to show an adverse employment action was "materially" adverse in a Title VII discrimination claim). Rather, a plaintiff must demonstrate "only some injury respecting her employment terms or conditions." *Muldrow*, 601 U.S. at 359; *see Darwin v. Newburgh Ops., LLC*, No. 22-CV-872, 2025 WL 722791, at *2 (S.D.N.Y. Mar. 6, 2025) (explaining "the standard clarified by *Muldrow*"). Plaintiff points to two possible adverse employment actions: the allegedly "burdensome additional work assignments" of his new committees, and the "termination of [his] employment." (Pl.'s Mem. 2.)

Both suffice as allegations of adverse employment actions at this early stage. Under *Muldrow*, or any standard, Plaintiff's termination was an adverse employment action. *See Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 468 (2d Cir. 2019) ("[T]ermination constitutes an adverse employment action[.]"); *Abdelal v. Police Comm'r*, 857 F. App'x 30, 31 (2d Cir. 2021) (summary order) (same). And considering *Muldrow*, Plaintiff has plausibly claimed that his assignment to various committees and the delegation to him of various administrative tasks in addition to his full-time coaching responsibilities amounted to adverse employment actions. The Amended Complaint includes allegations that these new responsibilities resulted in a "disproportionate increase in [Plaintiff's] workload," including purely "administrative work" and "ordering and changing printer ink and paper," which often took him away from the field and from his office, and for which he "was not offered any additional compensation." (AC ¶¶ 49–50, 56.) Also, these responsibilities were not given to other coaches. (*Id.* ¶¶ 50, 53–54.) And Plaintiff "complained about the assignment of additional duties" to College administrators when those assignments began, but "the additional responsibilities remained in place." (*Id.* ¶ 51.)

Allegations that a plaintiff was assigned a disproportionately greater workload than his peers, and of a greater share of less complex tasks, particularly with no additional compensation, could show the requisite "some harm" for an adverse employment action. *Ashmeade v. Amazon.com*, No. 23-CV-4331, 2026 WL 880645, at *10 (S.D.N.Y. Mar. 31, 2026); *see also Shukla v. Deloitte Consulting LLP*, No. 19-CV-10578, 2020 WL 8512852, at *8 (S.D.N.Y. Nov. 17, 2020) (pre-*Muldrow* case explaining adverse employment action could be found where plaintiff was "given a workload heavier than similarly situated employees"), *report and recommendation adopted*, 2021 WL 1131507 (S.D.N.Y. Mar. 24, 2021); *Kunik v. New York City Dep't of Educ.*, No. 15-CV-9512, 2017 WL 4358764, at *9 (S.D.N.Y. Sept. 29, 2017) (same). Defendants' arguments to the contrary are not persuasive because they apply the wrong standard. Defendants only cite cases that precede the Supreme Court's decision in *Muldrow*, (*see, e.g.*, Defs.' Mem. 20 (citing *Young v. Rogers & Wells LLP*, No. 00-CV-8019, 2002 WL 31496205, at *5 (S.D.N.Y. Nov. 6, 2002)), or that themselves rely on pre-*Muldrow* caselaw, (*see id.* (citing *Daniels v. Hofstra Univ.*, No. 21-CV-2920, 2025 WL 2783282, at *7 (E.D.N.Y. Sept. 30, 2025) (applying the "materially adverse" standard from before *Muldrow*)).

Next, the Court turns to the fourth and final element: whether the adverse employment action occurred under circumstances giving rise to discriminatory intent. "At the pleadings stage, a plaintiff must allege that the employer took adverse action against [him] at least in part for a discriminatory reason, and []he may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015)). The Amended Complaint does not contain any direct allegations of discrimination by Defendants, (*see*

*generally* AC), and Plaintiff seemingly concedes it does not, (*see* Pl.'s Mem. 12–13 (responding to Defendants' argument that there are no allegations of statements referencing Plaintiff's race by stating it is "not the law" that "discrimination can only be pleaded where direct evidence of discrimination exists")). Accordingly, to satisfy the intent factor, Plaintiff must allege facts that "indirectly show discrimination by giving rise to a plausible inference" thereof. *Vega*, 801 F.3d at 87. "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (quotation marks and citation omitted).

Here, the Amended Complaint alleges "the more favorable treatment of employees not in the protected group." *Id.* At all relevant times, Plaintiff "was the only African American head coach employed by the College." (AC ¶ 27; *see also id.* ¶ 142.) And he alleges no other head coach at the College—that is, no other employee in his same role outside of his protected class—was subjected to the same workload alterations as he was. (*See id.* ¶ 53 ("[N]o other head coach had ever been assigned this additional responsibility as a member of the DEI committee . . ."); *id.* ¶ 54 ("[N]o other Coach had ever been required to accumulate such responsibility in addition to their coaching duties.").) That suffices to support an inference of discrimination at this early stage. *See Feingold v. New York*, 366 F.3d 138, 153 (2d Cir. 2004) (holding that "[i]f a trier of fact credited . . . allegations" that supervisor "g[a]ve white [employees] more work than their African–American counterparts," trier of fact could "conclude [white employee] was subjected to disparate treatment under circumstances giving rise to an inference of racial discrimination"); *see also Sanderson v. Leg Apparel LLC*, No. 19-CV-8423, 2020 WL 3100256, at *7 (S.D.N.Y.

June 11, 2020) ("[The plaintiff's] allegations that he was assigned more work than . . . a white colleague with similar job responsibilities—are adequate to survive [the d]efendants' motion to dismiss."). Accordingly, with all reasonable inferences drawn in Plaintiff's favor, the Court finds Plaintiff has stated a plausible discrimination claim, at least against the College, under Title VII, the NYSHRL, and § 1981.

However, to adequately state a discrimination claim under the NYSHRL or § 1981 allegations against the *individual* defendants—here, Gervasi, Bell, O'Grady, Lowell, and Howe—Plaintiff must plausibly allege their personal involvement in the claimed discriminatory conduct. Generally, "[p]ersonal liability under section 1981 must be predicated on the actor's personal involvement." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68, 75 (2d. Cir. 2000) (quotation marks omitted); *see also Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004) (same). And to be liable for aiding or abetting discrimination under the NYSHRL, a plaintiff must show that an individual defendant "'actually participate[d]' in the improper conduct." *Frank v. Lawrence Union Free Sch. Dist.*, 688 F. Supp. 2d 160, 174 (E.D.N.Y. 2010) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), and explaining *Tomka* "remains both good law and binding precedent" as to this point); *see also Brown v. County of Westchester*, No. 22-CV-6146, 2024 WL 21937, at *10 (S.D.N.Y. Jan. 2, 2024) (dismissing NYSHRL discrimination claims against certain defendants where the "[p]laintiff fail[ed] to allege that [those defendants] were personally involved in any of the conduct at issue in her discrimination . . . or hostile work environment claims").

Defendants do not contest that Plaintiff has alleged Bell's and Gervasi's personal involvement in the decision to terminate him. (*See* Defs.' Mem. 22.) Plaintiff has not, however, adequately alleged O'Grady, Lowell, or Howe played any role in any of the conduct of which

Plaintiff complains, from assigning him his new responsibilities to his ultimate termination. The Amended Complaint only alleges O'Grady attended a meeting in February 2023 with Plaintiff about A.D. and C.B.'s comments, (*see* AC ¶ 33); that Lowell sent an email once in August 2024, on which Plaintiff was copied, "clarifying the Conference rules regarding student-athletes on academic probation," and once observed Cusato leading a practice, (*see id.* ¶¶ 82–84, 95); and that Howe was copied on an email from Plaintiff in February 2023 requesting a meeting about A.D. and C.B.'s comments, and that she "informed [Plaintiff] that . . . he was required to attend all team practices" but later clarified that in case of conflicts relating to committee meetings, "he should attend th[ose] meeting[s] and allow [Cusato] to lead the practice," (*see id.* ¶¶ 31, 96). Finally, Plaintiff obliquely alleges that O'Grady, Lowell, and Howe were generally aware of the events in the Amended Complaint. (*See id.* ¶¶ 110–11, 114, 142.) None of these allegations entails an inference that O'Grady, Lowell, or Howe "actually participated in the conduct giving rise to the claim of discrimination." *Barry v. Macy's, Inc.*, No. 20-CV-10692, 2022 WL 1104847, at *11 (S.D.N.Y. Apr. 13, 2022) (granting summary judgment for defendants on NYSHRL claim); *see also Bowman v. New York State Housing & Cmty. Renewal*, 2020 WL 1233701, at *9 (S.D.N.Y. Mar. 13, 2021) (dismissing § 1981 discrimination claim against individual defendants where the plaintiff "ha[d] not alleged that [the defendants] had personal involvement in the allegedly discriminatory conduct" beyond calling her into or observing a meeting where allegedly discriminatory action was taken). Similarly, Plaintiff has not alleged that either Bell or Gervasi were at all involved in the decision to increase his workload, beyond his allegations that they were aware of it. As Defendants note, the Amended Complaint does not state that either Gervasi or Bell "were employed by the College at the time" of Plaintiff's

appointment to various committees, (*see* Defs.' Mem. 23),[2] and it is silent as to who assigned Plaintiff the "duty of ordering and changing printer ink and paper for his office building," (*see* AC ¶ 54). So, to the extent the Amended Complaint states a claim against Gervasi and Bell personally under the NYSHRL or § 1981, it only does so in connection with their alleged involvement in the decision to terminate Plaintiff's employment.[3]

Finally, Defendant argues that Plaintiff's Title VII claims are untimely to the extent they are premised on adverse employment actions taken more than 300 days before he filed his EEOC charge in January 2025. (*See* Defs.' Mem. 17–18.) "A plaintiff must file any and all claims

---

[2] The Amended Complaint alleges Bell was hired after Plaintiff was assigned his new workload, (*see* AC ¶ 59), and Plaintiff does not plead otherwise or contest—although Defendant does not provide a basis for which the Court may take judicial notice of it at this stage—the accuracy of a press release indicating Gervasi was not selected as College president until after Bell was hired, (*see* Banks Decl. Ex. E (Dkt. No. 38)).

[3] Neither Party addresses individual liability under the NYSHRL in their briefing. In *Doe v. Bloomberg*, the New York Court of Appeals explained that under the NYSHRL, "a corporate employee simply does not qualify as an 'employer,' regardless of the employee's position or relationship to the employer." 167 N.E.3d 454, 458 (N.Y. 2021). As "employees," rather than "employers," that would ordinarily mean neither Bell nor Gervasi could be held liable under § 296(1), the text of which limits liability to "employers." *See* N.Y. Exec. L. § 296(1). But § 296(6) allows for liability for "any person" who aids, abets, incites, or compels another's discrimination. *See Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 330 (S.D.N.Y. 2024) (explaining that because the "NYSHRL provides for liability for discrimination on the part of employers only," an individual defendant, "as a non-employer, therefore cannot be held liable directly," but "the NYSHRL does permit an individual (including an employee) to be held liable for aiding and abetting a liable employer").

Accordingly, because the issue is not contested, the Court assumes Plaintiff is seeking to hold Gervasi and Bell liable under § 296(6) for having aided or abetted some conduct of the other's that violated the statute, *see Reichert v. Casa Sys.*, No. 24-CV-996, 2026 WL 867137, at *9 (S.D.N.Y. Mar. 30, 2026); *Stiler v. Amalgamated Life Ins. Co.*, No. 24-CV-8962, 2026 WL 867166, at *11 n.5 (S.D.N.Y. Mar. 30, 2026), as both were personally involved in some of the same conduct, like allegedly terminating Plaintiff for pretextual reasons, (*see, e.g.*, AC ¶¶ 87, 112–13); or for having aided or abetted the corporate entity of their employer, which "some courts in th[e Second C]ircuit have held" is possible under the statute, *Trapani v. Freeport Pub. Sch. Dist.*, No. 24-CV-3005, 2025 WL 2306658, at *6 (E.D.N.Y. May 2, 2025) (collecting cases), *report and recommendation adopted*, 2025 WL 1812324 (E.D.N.Y. July 2, 2025).

under Title VII with the EEOC within 300 days of the discriminatory act or practice." *De La Pena v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 406 (E.D.N.Y. 2013). The "continuing violation doctrine," however, "effectively toll[s]" this statute of limitations "until the last discriminatory act takes place," *id.* at 407, where a plaintiff alleges "both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy," *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013). But "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), *superseded in part by statute on other grounds*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (abrogating the accrual principle articulated in, among other cases, *Morgan*, as applied to pay discrimination); *Flores v. Entergy Nuclear Ops., Inc.*, 313 F. Supp. 3d 511, 525 (S.D.N.Y. 2018) ("[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." (quotation marks and citation omitted)), *aff'd*, 768 Fed. App'x 139 (2d Cir. 2019). Here, Plaintiff has not explained how his three additional assignments in the summer of 2023 were part of an "ongoing policy of discrimination" of which his termination more than a year later was also a part. Courts have held similar allegations constitute discrete acts from one another. *See Kirkland-Hudson v. Mount Vernon Sch. Dist.*, 665 F. Supp. 3d 412, 445 (S.D.N.Y. 2023) ("Courts in the Second Circuit have classified job assignments, including disproportionately difficult assignments, as discrete discriminatory acts." (collecting cases)). Plaintiff has therefore not sufficiently pled a "continuing violation" that would toll Title VII's statute of limitations to include them.

Accordingly, Defendants' Motion is granted as to the discrimination claims against Lowell, O'Grady, and Howe, and as to the Title VII claims premised on events more than 300 days before he filed his EEOC charge. The Motion is otherwise denied as to the remaining discrimination claims.

2. Title VII and § 1981 Retaliation Claims

Plaintiff also asserts Title VII retaliation claims against the College and § 1981 retaliation claims against all Defendants. (AC ¶¶ 120–37.) Like discrimination claims, Title VII, NYSHRL, and § 1981 retaliation claims share the same elements. *See Tori v. Marist Coll.*, No. 06-CV-419, 2008 WL 11451434, at *11 n.13 (S.D.N.Y. Sept. 11, 2008) ("As with discrimination, the elements required to make out a retaliation claim under Section 1981 [and] Title VII . . . are essentially the same, and therefore the Court analyzes them all under the Title VII framework."); *see also Brown v. County of Erie*, No. 12-CV-251, 2013 WL 885993, at *8 (W.D.N.Y. Mar. 8, 2013) (same) (citing *White v. Eastman Kodak Co.*, 368 F. App'x 200, 202 (2d Cir. 2010) (summary order)); *Kairam v. West Side GI, LLC*, No. 18-CV-1005, 2025 WL 2935321, at *25 (S.D.N.Y. June 21, 2025) (same as to the NYSHRL), *report and recommendation adopted*, 2025 WL 2778915 (S.D.N.Y. Sept. 30, 2025). A prima facie case of retaliation under Title VII or § 1981 requires a plaintiff to show that "(1) []he engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a[n] . . . adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (citing *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)).[4] "The

---

[4] Neither the Second Circuit nor the Supreme Court has held that *Muldrow* abrogated the Second Circuit's material adversity requirement for retaliation claims. *See Muldrow*, 601 U.S. at

employee at all times bears the burden of persuasion to show retaliatory motive." *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014) (citation omitted). Accordingly, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (citation omitted).

The Court begins and ends with the first element. "Protected activity includes any opposition to an employment practice 'so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the anti-discrimination laws.'" *Trotter v. Nat'l Football League*, 737 F. Supp. 3d 172, 182 (S.D.N.Y. 2024) (alterations adopted) (quoting *Kelly*, 716 F.3d at 14). Plaintiff argues he engaged in two protected activities: first, that he "expressed concerns about racial[ly] discriminatory statements made toward him" by A.D. and C.B., and second, he "opposed . . . as inadequate" Brown's suggestion of a two-game suspension for A.D. and C.B. (*See* Pl.'s Mem. 7.) He contends he had a good-faith belief that both the "statements made toward him . . . violated the law," and that Brown's suggestion of a two-game suspension "would create a hostile work environment and would violate the College Student-Athlete Handbook." (Pl.'s Mem. 7–8.)

Plaintiff's first example—his report to administrators about A.D. and C.B.'s statements—does not qualify as a protected activity under Title VII or § 1981 because he has not alleged his

---

357 (explaining the standard for retaliation is "peculiar to [that] context"); *Franco v. City of New York*, No. 19-CV-5905, 2025 WL 964014, at *5, *11 n.9 (E.D.N.Y. Mar. 31, 2025) (applying *Muldrow* to discrimination, but not retaliation, claim); *cf. Ziparo v. CSX Transp., Inc.*, 160 F.4th 314, 340 n.16 (2d Cir. 2025) (describing *Muldrow* as "adopt[ing] a broader construction of adverse employment action for Title VII discrimination claims," but noting its effect on other types of claims is "still unclear").

good-faith belief that his report was related to "actions of the employer," *Trotter*, 737 F. Supp. 3d at 182, or about an "unlawful *employment practice* of his employer," *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999). Indeed, Plaintiff's opposition memorandum cites a paragraph of *Small v. New York City Dep't of Educ.* explaining that a "complaint about student harassment . . . cannot constitute a protected activity for [the] purposes of Title VII." (Pl.'s Mem. 8 (quoting *Small*, 650 F. Supp. 3d 89, 103–04 (S.D.N.Y. 2023)).) Other cases in the Second Circuit provide further support for that proposition. *See, e.g.*, *Melendez v. County of Westchester*, No. 17-CV-9637, 2021 WL 467085, at *10 (S.D.N.Y. Feb. 8, 2021) ("[A] complaint that a non-employee discriminated against a plaintiff is . . . not a complaint about an employment practice unless the plaintiff provides some evidence to impute the discrimination by the non-employee to the employer."); *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2023 WL 2049800, at *25 (S.D.N.Y. Feb. 16, 2023) (explaining that law firm employee's complaints about discrimination by firm's clients, without basis to impute that discrimination to the law firm, did not qualify as "protected activity for purposes of [a] retaliation claim" under the employment laws because "opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual" (citing *Wimmer*, 176 F.3d at 135)). Here, the complained-of conduct, A.D. and C.B.'s statements,[5] are entirely attributable to those students alone based on the facts alleged, which provide no basis to impute those statements to the College. (*See generally* AC ¶¶ 28–29.) Nor do the allegations here show Plaintiff complained to the College that, for example, he felt those statements created a hostile

[5] The Court notes that, accepting Plaintiff's allegations as true, these comments are unacceptable and have no place at the College or elsewhere.

work environment for him in which the College's nonfeasance played any part.[6] (*Id.* ¶ 31.) Accordingly, "[b]ecause [Plaintiff] only complained about the discriminatory conduct of his student[s]— . . . not his employer—[Plaintiff] could not reasonably believe that he was opposing an unlawful *employment practice*." *Small v. City of New York*, No. 21-CV-1527, 2022 WL 376030, at *8 (S.D.N.Y. Feb. 7, 2022).

Plaintiff's second example—his statement to Brown with Plaintiff's view on how the *College* should *respond* to A.D. and C.B.—is a closer call, but is still not an opposition to an employment practice. As Plaintiff notes, "complaints about *a school or administrator's response to student harassment*" can constitute a protected activity under Title VII or § 1981. (Pl.'s Mem. 8 (quoting *Small*, 650 F. Supp. 3d at 103–04).) *See also Haynes v. Exec. Chamber for Off. of Gov. of New York*, No. 23-CV-8051, 2025 WL 935100, at *12 (S.D.N.Y. Mar. 27, 2025) (holding plaintiffs "sufficiently alleged that they engaged in protected activity because they opposed what they reasonably believe[d] was a violation of Title VII by their employer" where their complaints were "about the failure of their employer to do anything to protect [the p]laintiffs from [a third party's discriminatory] conduct and that [the d]efendants' failure to

[6] The facts here are distinct from those in *Summa v. Hofstra Univ.*, 708 F.3d 115 (2d Cir. 2013), which held that complaints against student-driven harassment that a plaintiff reasonably believed amounted to a hostile work environment were protected activity. There, the Second Circuit held a graduate student who worked as a manager of her school's football team had a good-faith belief that she engaged in protected activity when she complained to school administrators and to the New York State Division of Human Rights that she was sexually harassed by several players on the team on the bus back from a game. *Summa*, 708 F.3d at 126. That court explained the incident the plaintiff complained about "was close enough in severity to that in" cases recognizing a hostile work environment premised on a single incident "that a reasonable person certainly could have believed that it alone was enough to satisfy the standard." *Id.* Here, Plaintiff has not alleged that A.D. and C.B.'s comments, which he has not claimed he witnessed or occurred in his presence, were severe enough to have caused him to believe he was subjected to a hostile work environment, setting aside whether that belief would have been reasonable. (*See generally* AC ¶¶ 28–29, 31.)

provide remedial action was . . . fostering a hostile work environment"). But it would be implausible from the facts alleged to characterize Plaintiff's statement to Brown as a "complaint[] about *a school or administrator's response to student harassment*." *Small*, 650 F. Supp. 3d at 103–04. The Amended Complaint alleges that Brown "contacted Coach Lyn and asked him" how the College *should* continue to respond, "suggest[ing] a 2-game suspension," in response to which Plaintiff "explained that he was deeply offended about the discriminatory remarks made against him" by the students, "expressed that returning these players . . . would negatively affect the team's morale," and "suggested that the subject students should be removed from the soccer team" instead, which they ultimately *were* after a consultation with members of the team. (AC ¶¶ 38, 40–41, 46.) These allegations are well short of a complaint "about the failure of [an] employer to do anything to protect" Plaintiff from those students' harassment, *Haynes*, 2025 WL 935100, at *12; rather, they reflect that *before* the College issued its final response to the student harassment and while its provisional response to the students' harassment was still in place,[7] it consulted Plaintiff, and its ultimate response was in line with Plaintiff's suggestion. In other words, these allegations do not show that Plaintiff opposed an *employment* practice, rather than one administrator's tentative view as to how the College should discipline its students.

---

[7] The Amended Complaint also states A.D. and C.B. were suspended from the team or on probation through this time. (*See* AC ¶ 32, 37.) Plaintiff has not alleged that the College's immediate or interim response to the students' harassment—suspension and probation—was in any way insufficient or unsatisfactory, or that he complained about that response to the College. (*See generally* AC.)

Accordingly, the Court finds that Plaintiff has not plausibly claimed that he engaged in a protected activity for the purposes of a Title VII or § 1981 retaliation claim. For that reason, the Court grants the Motion as to Plaintiff's retaliation claims.

3. NYSHRL Hostile Work Environment Claim

The Amended Complaint's fourth and final count includes claims against all Defendants under the NYSHRL for creating a hostile work environment. (AC ¶¶ 138–52.) Historically, a hostile work environment claim under the NYSHRL required "a showing [1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). However, "the NYSHRL was amended on October 11, 2019 to eliminate the 'severe or pervasive' requirement in favor of a more lenient standard of liability." *Mayorga v. Greenberg*, No. 22-CV-387, 2023 WL 6307994, at *8 (E.D.N.Y. Sept. 28, 2023); *see McHenry v. Fox News Network*, LLC, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (explaining that "the NYSHRL was amended to direct courts to construe the NYSHRL . . . 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed'" (alteration in original) (quoting N.Y. Exec. L. § 300)). Now, plaintiffs need to show only that they were "subjected to inferior terms, conditions, or privileges of employment because of [their] membership in one or more protected categories." *Tortorici v. Bus-Tev, LLC*, No. 17-CV-7507, 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14, 2021) (emphasis added); *accord Mayorga*, 2023 WL 6307994, at *8.

Plaintiff points to several possible categories of actions taken against him that he argues subjected him to a hostile work environment: "[d]isproportionate workload" and "[a]dditional off-campus responsibilities," "[c]riticism for the reduced presence the college itself caused," "[f]alse and pretextual performance allegations," and his "ultimate termination." (Pl.'s Mem. 15–16.) Of these, only the first category—his alleged significantly disproportionately heavy workload—could support his hostile work environment claim. "Allegations of a heavier workload alone can support a viable hostile work environment claim if the plaintiff was subjected to disproportionately burdensome work assignments," as Plaintiff alleges occurred here. *Kirkland-Hudson*, 665 F. Supp. 3d at 466 (quotation marks omitted and alteration adopted); *Rys v. Davis*, No. 22-CV-10758, 2025 WL 896844, at *9 (S.D.N.Y. Mar. 24, 2025) (same); *see also Ashmeade*, 2026 WL 880645, at *16 ("At the pleading stage, Plaintiff is entitled to the reasonable inference that a workload five times that of Caucasian coworkers, with significantly less time and support, constitute disproportionately burdensome work assignments, that can support a viable hostile work environment claim." (citations and quotation marks omitted)).

The "[c]riticism for the reduced presence" levied at Plaintiff, however, and the "allegations" that constituted that criticism, (*see* Pl.'s Mem. 15–16), do not support a hostile work environment because they did not effect "inferior terms, conditions, or privileges" of employment on the facts alleged here. *See Kunzler v. McDonough*, No. 19-CV-7181, 2024 WL 197927, at *15 (E.D.N.Y. Jan. 18, 2024) ("[T]he type of conduct [the p]laintiff asserts [the d]efendant engaged in, *i.e.*, negative performance evaluations and disciplinary warnings resulting from work performance, does not support a hostile work environment claim."); *Brown v. New York City Dep't of Educ.*, No. 19-CV-7181, 2022 WL 6559760, at *7 (S.D.N.Y. Sept. 1, 2022)

(holding the plaintiff's "negative evaluations are insufficient to show a hostile work environment"), *report and recommendation adopted*, 2022 WL 6559760 (S.D.N.Y. Sept. 21, 2022). Nor, by definition, does Plaintiff's ultimate termination—an incident that *removed* him from his work environment—support a hostile work environment claim, even if it could support a discrimination claim if he were fired for an unlawful reason. *See Binns-Harty-Bolt v. McDonough*, No. 21-CV-7276, 2024 WL 3362409, at *7 (S.D.N.Y. June 21, 2024) ("[F]ailure to promote or termination, though forms of discrimination that are actionable in other ways, do not give rise to a hostile work environment claim without an allegation that they created hostility in the workplace. Otherwise, any retaliation or discrimination claim would also give rise to a hostile work environment claim." (citing *Thior v. JetBlue Airways, Inc.*, 2016 WL 5092567, at *4 (E.D.N.Y. Sept. 19, 2016))), *report and recommendation adopted*, 2024 WL 3362944 (S.D.N.Y. July 10, 2024); *see also Hogan v. J.P. Morgan Chase Bank*, No. 05-CV-5342, 2009 WL 10701267, at *4 (E.D.N.Y. June 15, 2009) ("[T]ermination, even if discriminatory[,] is not an act that contributes to a hostile work environment." (quotation marks omitted)).

Next, "[i]t is 'axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable . . . only when it occurs because of an employee's protected characteristic,' such as race or gender." *Lloyd v. Holder*, No. 11-CV-3154, 2013 WL 6667531, at *11 (S.D.N.Y. Dec. 17, 2013) (alterations omitted) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)); *accord Kirkland-Hudson*, 665 F. Supp. 3d at 465. For the same reasons that Plaintiff has adequately alleged facts giving rise to an inference of discrimination for his Title VII, NYSHRL, and § 1981 discrimination claims, he has plausibly alleged the hostile work environment premised on the same incidents occurred because of his race. *See Ramos v. City of Hartford*, 744 F. Supp. 3d 169, 189 (D. Conn. 2024) (explaining that

a "plaintiff can make . . . a showing" that a "hostile work environment" was "because of [the plaintiff's] membership in a protected class" by pointing to means of indirect proof discussed in *Littlejohn*, including "more favorable treatment of employees not in the protected group"); *see also Sanderson*, 2020 WL 3100256, at *8 & n.7 (finding the plaintiff's "claims for hostile work environment racial discrimination survive for much the same reason" as his discrimination claims, noting they are both "two ways of proving a claim for disparate treatment," and "[t]here may thus be little, if any, practical difference" between the plaintiff's choices of theories); *cf. Moazzaz v. MetLife, Inc.*, No. 19-CV-10531, 2021 WL 827648, at *12 (S.D.N.Y. Mar. 4, 2021) (in the converse, "infer[ring] a discriminatory motive for [the plaintiff's] termination based on the allegations supporting the hostile work environment claim").

Finally, NYSHRL hostile work environment claims against *individual* defendants require allegations that those defendants were personally involved in the conduct giving rise to the claim, assuming there is a theory consistent with *Doe v. Bloomberg* under which those claims could proceed. *See Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 280 (S.D.N.Y. 2010) ("Though [the] NYSHRL . . . allow[s] for liability of individual defendants on the basis of a hostile work environment claim . . . the individual must have actually participated in the conduct from which the claim arises." (quotation marks and alterations omitted)). Here, Plaintiff has not alleged that *any* of the individual defendants was involved in assigning him his disproportionately heavy workload. (*See* AC ¶ 50 (explaining that Brown, who is not named as a defendant in this Action, assigned Plaintiff to be Community Service Coordinator); *id.* ¶ 52 (not stating who assigned Plaintiff to the DEI committee); *id.* ¶ 54 (not stating who assigned him the responsibility of tending to the office printer).) Accordingly, Plaintiff's NYSHRL hostile work environment claim must be dismissed as to the individual defendants. *See Oliver v. New York*

*State Police*, No. 15-CV-444, 2020 WL 1989180, at *51 (N.D.N.Y. Apr. 27, 2020) (granting summary judgment on NYSHRL hostile work environment claims against individual defendants where the plaintiff could not show they participated in conduct giving rise to the claim); *Chanval Pellier v. British Airways, Plc.*, No. 02-CV-4195, 2006 WL 132073, at *12 (E.D.N.Y. Jan. 17, 2006) ("Because [the plaintiff] does not allege that the individual defendants 'actually engaged' in the conduct which created the hostile work environment, her claims against the individual defendants for aiding and abetting under the NYSHRL and the NYCHRL must be dismissed." (citation omitted)).

Accordingly, the Court finds Plaintiff has stated a plausible hostile work environment claim under the NYSHRL, but only as to the allegedly disproportionate work he was assigned that others who shared his position were not, and only against the College.

## III. Conclusion

For the foregoing reasons, the Court grants Defendants' Motion in part and denies it in part. Because the Court already provided Plaintiff an opportunity to amend after Defendants' pre-motion letter, which put him on notice of substantially the deficiencies in the Amended Complaint discussed herein, the Court does not grant further leave to amend, and any claims dismissed herein are dismissed with prejudice. *See Kirkland-Hudson*, 665 F. Supp. 3d at 472. The Clerk of Court is respectfully directed to terminate the pending Motion at Dkt. No. 37.

SO ORDERED.

Dated: September 28, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge